IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| WALTER EARL DODD, JR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:12-cv-00087 ) Senior Judge Haynes ) |
| JERRY SIMMONS, et al., | ) ) |
| Defendants. | ) ) |

**MEMORANDUM**

Plaintiff, Walter Earl Dodd, Jr., filed this action under 42 U.S.C. § 1983 against the Defendants: Jerry Simmons, Charles Pierce, and the City of Centerville, Tennessee. Plaintiff asserted claims arising out of his arrest by Defendant Pierce and subsequent prosecution. Specifically, Plaintiff alleged that Defendants Simmons and Pierce conspired to unlawfully arrest Plaintiff without probable cause in violation of his Fourth Amendment rights under the United States Constitution. Plaintiff also alleged that the City of Centerville failed to adequately train, supervise, and discipline its police officers and that such failure caused Plaintiff's unlawful arrest and prosecution in violation of the Fourth Amendment.

On March 24, 2015, Plaintiff's claims proceeded to a jury trial. At the conclusion of Plaintiff's proof, Defendants Simmons, Pierce, and the City of Centerville each presented motions for judgment as a matter of law under Fed. R. Civ. P. 50. The Court granted the City of Centerville's motion, dismissing it from this action, but denied the motions brought by Simmons and Pierce. (Docket Entry No. 254). At the close of all proof, Simmons and Pierce each renewed their Rule 50 motions and the Court reserved ruling. On March 27, 2015, the jury returned a verdict in favor of Plaintiff, finding that Pierce violated Plaintiff's Fourth Amendment right to be free from unlawful

or false arrest and awarding Plaintiff $75,000.00 in compensatory damages against Pierce. (Docket Entry No. 257). The jury also found that Pierce and Simmons did not act in concert or conspire to obtain the arrest warrant. Id. Accordingly, Plaintiff's conspiracy claims against Pierce and Simmons were dismissed with prejudice and Simmons was dismissed from this action. (Docket Entry No. 260). Based upon the jury's verdict, the Court denied Simmons' renewed Rule 50 motion as moot and denied Pierce's renewed Rule 50 motion. (Docket Entry No. 259).

Before the Court is Defendant Pierce's motion to renew motion for judgment as a matter of law and for a new trial (Docket Entry No. 273), contending that: (1) Pierce had probable cause to arrest Plaintiff, (2) Pierce is entitled to qualified immunity, and (3) Plaintiff failed to prove conspiracy. In the alternative, Pierce contends that a new trial is warranted because: (1) the verdict is contrary to the clear weight of the evidence, (2) the damages awarded by the jury are excessive, and (3) the trial was unfair to Pierce.[1] Plaintiff filed a response in opposition (Docket Entry No. 286), contending that the evidence presented at trial was sufficient for a reasonable jury to conclude that Pierce lacked probable cause to arrest Plaintiff and Pierce is not entitled to qualified immunity. As such, Plaintiff contends that the evidence presented at trial is sufficient to support the award and a new trial is not warranted. Defendant Pierce filed a reply. (Docket Entry No. 289).

For the reasons stated herein, the Court concludes that Plaintiff presented a sufficient evidentiary basis for a reasonable jury to find in Plaintiff's favor against Pierce and the Court does not find the result to seriously erroneous. Accordingly, Defendant Pierce's motion to renew motion for judgment as a matter of law and for a new trial (Docket Entry No. 273) should be granted but his

---

[1]Defendant Pierce also filed a supplemental memorandum of law in support of his motion to renew motion for judgment as a matter of law and for new trial. (Docket Entry No. 283).

renewed motion for judgment as a matter of law or, in the alternative, new trial should be denied.

## A. Rule 50(b) Motion for Judgment as a Matter of Law

Under Fed. R. Civ. P. 50(b), a court may grant a renewed motion for judgment as a matter of law "only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." Radvansky v. City of Olmsted, 496 F.3d 609, 614 (6th Cir. 2007). The party seeking a judgment as a matter of law must "overcome the substantial deference owed a jury verdict." Id. "Neither the district court nor the reviewing court may reweigh the evidence or assess the credibility of witnesses." Id.

### 1. Probable Cause

The Fourth Amendment requires that a law enforcement official have probable cause for an arrest. U.S. Const. amend. IV. Thus, in order to prevail on a wrongful arrest claim under § 1983, Plaintiff must prove that the arresting officer lacked probable cause to arrest Plaintiff. Voyticky v. Village of Timberlake, Ohio, 412 F.3d 669, 677 (6th Cir. 2005).

The Supreme Court has explained that:

> The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. We have stated, however, that '[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt,' and that the belief of guilt must be particularized with respect to the person to be searched or seized. In Illinois v. Gates, we noted:
>
>> As early as Locke v. United States, 7 Cranch 339, 348, 3 L.Ed. 364 (1813), Chief Justice Marshall observed, in a closely related context: '[T]he term "probable cause," according to its usual acceptation, means less than evidence which would justify

3

> condemnation ... It imports a seizure made under circumstances which warrant suspicion.' More recently, we said that 'the quanta ... of proof' appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision.
>
> To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause.

Maryland v. Pringle, 540 U.S. 366, 371 (2003) (internal citations omitted).

Thus, the probable cause necessary to justify an arrest is defined as "whether at that moment the facts and circumstances within [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." Radvansky, 496 F.3d at 614-15 (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). The probable cause determination is limited to the "totality of the circumstances" known to the officer at the time of arrest, including all facts known to the officer at the time. Gardenhire v. Schubert, 205 F.3d 303, 318 (6th Cir. 2000).

Yet, "the initial probable cause determination must be founded on 'both the inculpatory and exculpatory evidence' known to the arresting officer." Logsdon v. Hains, 492 F.3d 334, 341 (6th Cir. 2007) (quoting Gardenhire, 205 F.3d at 318) (emphasis in original). The officer "cannot simply turn a blind eye toward potentially exculpatory evidence." Id. (quoting Ahlers v. Schebil, 188 F.3d 365, 372). Thus, an officer "cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the

judge would not have issued the warrant." Sykes v. Anderson, 625 F.3d 294, 305 (6th Cir. 2010) (citing Vakilian v. Shaw, 335 F.3d 509, 517 (6th Cir. 2003)).

Here, the two officers who responded to the initial incident at McDonald's, Officer Witherspoon and Officer Roberts, both described the incident as a verbal dispute between two families. (Docket Entry No. 268, Transcript II at 16-17, 41-44). Neither officer felt that a crime had been committed and neither officer recommended further investigation. Id. Both Officer Witherspoon and Officer Roberts testified that, in making their determination, they spoke to Earl Dodd as well as members of the Simmons family and Cory Chandler. Id. at 16, 43-44.

Pierce testified that, after he received written statements from Cory Chandler and Pam Simmons, he spoke with Officer Roberts, who gave him a written report that same day. (Docket Entry No. 269, Transcript III at 96-101). Pierce also testified that Officer Roberts told him that he did not see a crime. Id. at 101.

Yet, Pierce testified that the information contained in the affidavit in support of probable cause for the arrest warrant came specifically from the statements of Pam Simmons and Cory Chandler. Id. at 109. Pierce testified that he did not include any information from Officer Roberts' report in the affidavit. Id. In addition, Pierce did not interview Plaintiff as part of his investigation.

Thus, the Court concludes that a reasonable jury could have concluded that the evidence presented at trial established that Defendant Pierce turned a blind eye toward potentially exculpatory evidence.

## 2. Qualified Immunity

As an initial matter, Plaintiff contends that Defendant Pierce waived his qualified immunity argument by failing to raise this issue in his Rule 50(a) motion. To be sure, the words "qualified

5

immunity" were not used during Defendant's Rule 50(a) motion. Yet, both Defendant and Plaintiff presented arguments as to the "objective reasonableness" of Pierce's conduct as well as clearly established law. (Docket Entry No. 268, Transcript II at 216-21). Thus, the Court concludes that Defendant has not waived his qualified immunity argument, as the Rule 50(a) motion sufficiently put the court and Plaintiff on notice as to the Defendant's qualified immunity defense. See Sykes, 625 F.3d at 304.

Regardless, to overcome the qualified immunity defense, Plaintiff must show that the right was clearly established at the time of the violation and that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Thomas v. Cohen, 304 F.3d 563, 569 (6th Cir. 2002) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Plaintiff has a Fourth Amendment right to be free from arrest based upon the omission of material information from the arrest warrant application. See Sykes, 625 F.3d at 305 (collecting cases). Thus, Pierce owed Plaintiff a clearly established legal duty to make a reasonable inquiry for inculpatory and exculpatory evidence. As discussed supra, the Court concludes that a reasonable jury could find that Pierce presented limited information and omitted material exculpatory information in his affidavit for the arrest warrant of Plaintiff. Such conduct would be objectively unreasonable, precluding Pierce from asserting qualified immunity.

### 3. Conspiracy

Defendant Pierce contends that, in light of the jury's finding that Defendants Pierce and Simmons did not conspire to obtain the arrest warrant for Plaintiff, there was no evidence that Pierce acted intentionally for the purpose of violating Plaintiff's rights.

Plaintiff does not respond to this specific argument in his Response (Docket Entry No. 286).

Yet, in order to prevail on a false-arrest claim, Plaintiff must prove by a preponderance of the evidence that Defendant Pierce "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood," and that "such statements or omissions [we]re material, or necessary, to the finding or probable cause." Sykes, 625 F.3d at 305 (quoting Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000)).

Here, Plaintiff's conspiracy claim addresses a potential motivation for Defendants' actions. Yet, a finding by the jury that Defendants Pierce and Simmons did not conspire to obtain the arrest warrant for Plaintiff does not necessarily preclude a reasonable jury from finding that Defendant Pierce knowingly, or with reckless disregard, omitted material information in the course of obtaining the arrest warrant.

Thus, the Court concludes that, when viewing the evidence in the light most favorable to Plaintiff, Plaintiff presented a sufficient evidentiary basis for a reasonable jury to find in favor of Plaintiff. Accordingly, Defendant Pierce's renewed motion for judgment as a matter of law should be denied.

### B. Rule 59(a) Motion

Under Fed. R. Civ. P. 59(a), a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Generally, a district court should grant a motion for new trial only "when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." Mitchell v. Boelcke, 440 F.3d 300, 303 (6th Cir. 2006) (quoting Holmes v. City of Massillon, Ohio, 78 F.3d 1041, 1045-46 (6th Cir. 1996)). The

burden of demonstrating the necessity of a new trial is on the moving party, and the ultimate decision of whether to grant such relief is a matter vested within the sound discretion of the district court. Clarksville-Montgomery Co. Sch. Sys. v. U.S. Gypsum Co., 925 F.2d 993, 1002 (6th Cir. 1991).

### 1. Verdict Contrary to the Weight of the Evidence

"When ruling on a new trial motion claiming that the verdict was against the weight of the evidence, the district court may compare the opposing proofs and weigh the evidence." Conte v. General Housewares Corp., 215 F.3d 628, 637 (6th Cir. 2000) (internal quotations omitted). Yet, courts "will uphold the jury verdict if it is one the jury reasonably could have reached; [courts] cannot set it aside simply because we think another result is more justified." E.E.O.C. v. New Breed Logistics, 783 F.3d 1057, 1066 (6th Cir. 2015) (internal quotations omitted).

Here, Defendant Pierce contends that Plaintiff failed to establish that Pierce violated Plaintiff's Fourth Amendment rights. Alternatively, Pierce contends that he is entitled to qualified immunity. For the reasons discussed supra, the Court concludes that Plaintiff presented sufficient evidence at trial to support a reasonable jury finding in favor of Plaintiff and that, as a result, Defendant Pierce is not entitled to qualified immunity. Thus, the Court concludes that the jury's verdict in this action is not against the weight of the evidence.

### 2. Excessive Damages

Generally, "a jury verdict will not be set aside or reduced as excessive unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss." Sykes, 625 F.3d at 322 (quoting American Trim, L.L.C. v. Oracle Corp., 383 F.3d 462, 475 (6th Cir. 2004)). Thus, "a trial court is within its discretion in remitting a verdict only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly

burden of demonstrating the necessity of a new trial is on the moving party, and the ultimate decision of whether to grant such relief is a matter vested within the sound discretion of the district court. Clarksville-Montgomery Co. Sch. Sys. v. U.S. Gypsum Co., 925 F.2d 993, 1002 (6th Cir. 1991).

### 1. Verdict Contrary to the Weight of the Evidence

"When ruling on a new trial motion claiming that the verdict was against the weight of the evidence, the district court may compare the opposing proofs and weigh the evidence." Conte v. General Housewares Corp., 215 F.3d 628, 637 (6th Cir. 2000) (internal quotations omitted). Yet, courts "will uphold the jury verdict if it is one the jury reasonably could have reached; [courts] cannot set it aside simply because we think another result is more justified." E.E.O.C. v. New Breed Logistics, 783 F.3d 1057, 1066 (6th Cir. 2015) (internal quotations omitted).

Here, Defendant Pierce contends that Plaintiff failed to establish that Pierce violated Plaintiff's Fourth Amendment rights. Alternatively, Pierce contends that he is entitled to qualified immunity. For the reasons discussed supra, the Court concludes that Plaintiff presented sufficient evidence at trial to support a reasonable jury finding in favor of Plaintiff and that, as a result, Defendant Pierce is not entitled to qualified immunity. Thus, the Court concludes that the jury's verdict in this action is not against the weight of the evidence.

### 2. Excessive Damages

Generally, "a jury verdict will not be set aside or reduced as excessive unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss." Sykes, 625 F.3d at 322 (quoting American Trim, L.L.C. v. Oracle Corp., 383 F.3d 462, 475 (6th Cir. 2004)). Thus, "a trial court is within its discretion in remitting a verdict only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly

excessive, resulted from passion, bias or prejudice; or is so excessive or inadequate as to shock the judicial conscience of the court." Moore v. Freeman, 355 F.3d 558, 564 (6th Cir. 2004) (citing Sallier v. Brooks, 343 F.3d 868, 880 (6th Cir. 2003)).

At trial, Plaintiff did not offer any expert witnesses in support of any claim for damages. In addition, Plaintiff did not present proof of any medical bills or any records of medical procedures that he required following his arrest. Thus, the Court agrees with Defendant Pierce, and Plaintiff does not dispute, that the jury awarded Plaintiff $75,000 in damages for mental and emotional distress. See Docket Entry No. 286, Plaintiff's Response in Opposition Defendant Charles Pierce's Motion for Judgment as a Matter of Law and for a New Trial at 12-13. Yet, "the absence of medical bills [is] not dispositive in regards to assessing the harm that may have been caused" to Plaintiff. Holmes, 78 F.3d at 1048 (awarding Plaintiff $50,000 in compensatory damages to cover not only the physical pain suffered on account of the defendant's actions but also to compensate Plaintiff for the emotional harm caused by being deprived of her constitutional rights by a law enforcement officer); see also Pembaur v. City of Cincinnati, 882 F.2d 1101, 1104 (6th Cir. 1989) (noting that compensatory damages include out of pocket expenses as well as personal humiliation, mental anguish, and suffering).

"[D]amages for mental and emotional distress will not be presumed, and must be proven by competent evidence." Moorer v. Baptist Memorial Health Care System, 398 F.3d 469, 485 (6th Cir. 2005) (internal quotations omitted). Yet, "emotional injury may be proved without medical support," and "[a] plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden in this regard." Id. (internal citations omitted).

Here, Plaintiff's own testimony (Docket Entry No. 268, Transcript II at 183-89, 193-97, 199-

200), combined with that of his wife (Docket Entry No. 267, Transcript I at 55-62), constitutes competent evidence of the mental and emotional distress Plaintiff experienced as a result of this incident. Specifically, Plaintiff testified as to the embarrassment and humiliation he experienced both at work and in the community, particularly the bluegrass music community in which Plaintiff was a champion musician. (Docket Entry No. 268, Transcript II at 186-89). Plaintiff also testified extensively about the stress and physical symptoms that he has experienced following his arrest. In addition, Plaintiff's wife testified that Plaintiff experiences "depression" and "anxiety" and spends "[m]ost of the time in bed. Or back in our bedroom, watching TV by himself." (Docket Entry No. 267, Transcript I at 55-56).

To be sure, the cases cited by Plaintiff in support of the jury's award involve awards of less than $75,000. See Moore v. Freeman, 355 F.3d 558, 564 (upholding $40,000 award for mental and emotional distress); Holmes, 78 F.3d at 1048-49 (reinstating $50,000 compensatory damages award for physical as well as emotional pain and suffering). Yet, the Court finds that Plaintiff presented sufficient proof at trial for the jury to reasonably make this award. The Court cannot say that the damages award in this action is unreasonable or clearly excessive, resulted from passion, bias or prejudice, or that it shocks the judicial conscience of the Court. Accordingly, the Court concludes that the jury's award of $75,000 was not excessive.

### 3. Unfair Trial

First, Defendant Pierce contends that Plaintiff's counsel's reference to federal regulations and a causal connection between his arrest and medical condition as well as the publishing of an itemized damages list, including dollar amounts, during Plaintiff's closing argument created unfair prejudice.

"Although prejudice that affects the fairness of a proceeding can certainly be grounds for a

new trial, when 'such prejudice is cured by instruction of the court, the motion for a new trial should be denied.'" Holmes, 78 F.3d at 1046-47 (quoting Clarksville-Montgomery County Sch. Sys., 925 F.2d at 1002); see also Smith v. Travelers Ins. Co., 438 F.2d 373, 375 (6th Cir. 1971) (holding that, in light of the curative instructions given by the district court and the context of the entire record, the improper comments of the plaintiff's attorney were not so prejudicial as to warrant a new trial).

During Plaintiff's closing argument, counsel for Plaintiff referenced, as an example, a $52,644.80 award for mental anguish and emotional distress in an unrelated action. (Docket Entry No. 270, Transcript IV at 34). Defense counsel objected and the Court sustained the objection. Id. at 34-35. Although the Court did not issue a limiting instruction as to this specific reference, the Court did sustain the objection and the Court had previously instructed the jury to disregard testimony if the Court sustains an objection. In addition, in response to Defendant's objection to the itemized damages list and the references to "mini-strokes," the Court instructed the jury to disregard the itemized list of damages, stating that "whether a person suffered a stroke must be demonstrated by expert proof, and there is no expert proof as to mini-strokes." Id. at 37-38.

Thus, the Court concludes that any prejudice that may have resulted from Plaintiff's counsel's references to separate damage awards, mini-strokes, or the itemized damages list was cured by the Court's instructions to the jury. See Holmes, 78 F.3d at 1047 ("We find it error to infer that the jury did not or could not follow the judge's clear instruction in this regard.").

Second, Defendant Pierce contends that, because Plaintiff's claims against the individual Defendants and the City of Centerville were combined into one trial, Plaintiff was allowed to present evidence that was irrelevant to Pierce's liability and unfairly prejudicial. Specifically, Pierce cites evidence that he violated the City of Centerville's policies as well as evidence of the TBI

investigation and the testimony of Robert Bohn as examples of unfairly prejudicial evidence.

As an initial matter, upon review of the record, the Court notes that Defendant did not request a limiting instruction as to any alleged prejudicial evidence arising from a failure to bifurcate. In addition, following the testimony of Agent Harmon and Robert Bohn, the Court instructed the jury that the criminal conviction of Defendant Simmons, identified in both Harmon and Bohn's testimony, was only to be considered on the limited issue of whether Simmons had a reputation as being a good police officer. (Docket Entry No. 268, Transcript II at 162). In addition, following closing arguments, the Court instructed the jury that:

> You have heard reference about state criminal investigation and the results of that investigation and whether a party was a target in that investigation. The results of a criminal investigation is not relevant to this civil case, because different standards apply in criminal cases as opposed to civil cases. Thus, the results of the state criminal investigation is not to be considered by you.

(Docket Entry No. 270, Transcript IV at 77). Regarding evidence that Pierce violated the City of Centerville's policies, for the reasons discussed supra, the Court concludes that the jury reasonably could have determined that Pierce violated Plaintiff's rights even without considering any potential policy violations.

Third, Defendant Pierce contends that the introduction of certain evidence at trial, over Defendant's objections, created unfair prejudice. In addressing the parties' motions in limine, the Court previously ruled that, although evidence of policy violations is inadmissible for the purpose of establishing a lack of probable cause, such evidence may be admissible for other purposes. (Docket Entry No. 234, Memorandum Opinion of the Court at 7). Here, Pierce cites testimony from Ronnie Carroll elicited during Plaintiff's proof. Yet, at that stage of the trial, the City of Centerville

was still a party and, as the Court noted during the bench conference, questions about City policy were relevant to the issue of the officers' training.

Regarding medical proof, Plaintiff cites testimony from Mrs. Dodd (Docket Entry No. 267, Transcript I at 57-58) and Plaintiff (Docket Entry No. 268, Transcript II at 195-97) regarding medical conditions and expenses. Yet, in both instances, Defendants objected to the medical proof and the Court sustained the objections. In addition, in response to a similar objection during Plaintiff's closing argument, the Court instructed the jury that "whether a person suffered a stroke must be demonstrated by expert proof, and there is no expert proof as to mini-strokes." (Docket Entry No. 270, Transcript IV at 37-38).

Pierce also contends that the Court's objection to counsel's reference to ADA Yeager during closing argument was contrary to the proof presented at trial and the law. Specifically, during closing argument, counsel for Pierce argued that:

> "[Pierce] does what a cautious, good police officer does. He goes to speak to the one person who would handle the very charge that this case is centered upon, Kate Yeager. He goes to seek her second opinion.
>
> Did you find her credible? Did you find that her testimony made sense? Yes. Did she say that there was some obligation for him to speak with every witness? No. That's not what they are looking for at that stage.

(Docket Entry No. 270, Transcript IV at 49).

Yet, "an officer [or investigator] cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." Vakilian v. Shaw, 335 F.3d 509, 517 (6th Cir. 2003) (internal citations omitted). Thus, the Court instructed the jury that "any decision by the

Magistrate or Assistant District Attorney General cannot be considered by you where the issue is whether the officer made false statements or omitted material facts from the Judge." (Docket Entry No. 270, Transcript IV at 89). The Court does not find any unfair prejudice in this instruction.

Finally, Pierce contends that the jury instructions created confusion and bias. Courts assess "whether, taken as a whole, the instructions adequately inform the jury of the relevant considerations and provide the jury with a sound basis in law with which to reach a conclusion." E.E.O.C. v. New Breed Logistics, 783 F.3d 1057, 1074 (6th Cir. 2015) (quoting Pivnick v. White, Getgey & Meyer Co., LPA, 552 F.3d 479, 488 (6th Cir. 2009)). Thus, "erroneous jury instructions only require reversal if they are confusing, misleading, and prejudicial. An erroneous jury instruction should not be reversed where the error is harmless." Id. at 1074-75.

As to the Court's reference to the "smell test," Defendant's counsel used this terminology, but his counsel contends this language was not intended to change the standard of proof by which the jury should render its verdict. Whatever counsel's intention, the Court viewed the effect of such language to mislead the jury to apply a higher standard than the preponderance of the evidence. The Court instructed the jury that "[t]he standard of proof is not which party's proof makes the most sense or satisfies the smell test. The Court instructs you the legal standard you are required to apply is whether the plaintiff shows that what he claims happened more likely than not happened." (Docket Entry No. 270, Transcript IV at 75). The Court does not find any unfair prejudice in this instruction.

Regarding the Court's instruction to disregard the results of the TBI criminal investigation, Pierce contends that the Court's instruction prohibited the jury from considering Agent Harmon's conclusion that Pierce had done nothing inappropriate. For the reasons discussed supra, the Court

instructed the jury to disregard the criminal investigation because different standards apply to criminal and cases. Moreover, Pierce concedes that the TBI investigation is "unrelated to whether or not Pierce had probable cause to arrest the Plaintiff." (Docket Entry No. 283, Defendant Pierce's Supplemental Memorandum of Law in Support of Motion to Renew Motion for Judgment as a Matter of Law at 12). As such, the Court does not find any unfair prejudice in its instruction to the jury regarding the TBI investigation.

Regarding the Court's answer to certain questions from the jury during deliberation, Pierce contends that the Court's answers were contrary to the proof presented at trial. Specifically, the Court received a note from the jury asking: "If omitted information withheld from the Magistrate would have changed the charge stated in the warrant, does that constitute a Fourth Amendment violation?" (Docket Entry No. 270, Transcript IV at 106). During the subsequent conference on the record, counsel for Defendant Pierce noted that the Court's instructions to the jury answered the question. See id. at 102. Specifically, the parties acknowledged that, on page 29 of the jury instructions, the Court instructed the jury that: "Indeed, a claim for unlawful arrest can fail if probable cause exists for a crime other than the crime for which the defendant was arrested or charged." Id. at 102-03. Yet, counsel for Defendant Pierce contended that the jury should be allowed to consider probable cause for the lesser charge of assault. Although the Court concluded that, during trial, Pierce only argued for the offense of aggravated assault, the Court answered the jury's question by simply referring the jury to the relevant language on page 29 of the jury instructions. Id. at 107. Importantly, however, that language instructs the jury that an unlawful arrest claim "**can fail if probable cause exists for a crime other than the crime for which the defendant was arrested or charged.**" Id. at 102-03 (emphasis added). Thus, the Court's instruction to the jury did not preclude the jury from

considering probable cause for simple assault. Accordingly, the Court does not find any unfair prejudice in its answer to the jury's question.

Regarding the Court's instruction as to ADA Yeager and Magistrate Judge Bowman's testimony, a police officer cannot rely upon a judicial or prosecutorial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that, but for these falsities, the judge would not have issued the warrant. See Vakilian v. Shaw, 335 F.3d at 517. Thus, as discussed supra, the Court does not find any unfair prejudice in instructing the jury that any decision by the Magistrate Judge or Assistant District Attorney General cannot be considered where the issue is whether the officer made false statements or omitted material facts from the judge.

### C. Conclusion

Accordingly, Defendant Pierce's motion to renew motion for judgment as a matter of law and for a new trial (Docket Entry No. 273) should be granted but Defendant Pierce's renewed motion for judgment as a matter of law or, in the alternative, new trial should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 21st day of September, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge